IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN FOWLER,

    Plaintiff,

v.                                                                No. CIV 07-0662 JB/RLP

CNSI and NCI,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed September 20, 2007 (Doc. 7).  The Court held a hearing on January 17, 2008.  The primary issue is whether Defendant NCI Information Systems, Inc. is a proper party to this action because Plaintiff John Fowler gave the Equal Employment Opportunity Commission ("EEOC") the wrong address for Defendant NCI and thus NCI was not able to participate in the pre-filing mediation processes.  Because the burden of Fowler's mistake must fall on some party, and because Congress has emphasized the importance of the EEOC's mediation role before charges are brought to federal court, the Court will grant the motion and dismiss NCI from this case.

**FACTUAL BACKGROUND**

NCI Information Systems, Inc. ("NCI, Inc.") is a publicly traded company.  See Defendant's Memorandum in Support of its Motion to Dismiss or, in the Alternative, its Motion for Summary Judgment, filed September 20, 2007 (Doc. 8)("Memo."), Exhibit 1, Affidavit of Lenn Trammelle ¶ 10, at 3 (executed September 19, 2007)("Tramelle Aff."). NCI is a subsidiary of NCI, Inc., which is a Delaware holding company.  See id. ¶ 2, at 1.  NCI is a leading information technology, system

emergency, and integration company, and is headquartered in Reston, Virginia.  See id.  NCI's customers include federal and civilian agencies and organizations, and it performs work in various locations throughout the United States.  See id.

NCI's Board of Directors consists of two management Directors and six independent Directors.  See id. ¶ 8, at 2-3.  NCI files corporate income taxes with both the federal and state governments.  See id. NCI maintains its own Human Resource Department, and its employees are subject to NCI's personnel policies and procedures.  See id.  Payroll checks are issued to NCI employees on checks that bear NCI's name, and the money is drawn from NCI's funds.  See id.

NCI does business in Albuquerque, New Mexico, pursuant to a service contract with the United States Department of Energy, National Nuclear Security Administration. See id. ¶ 4, at 1-2. NCI's work on this contract is as a sub-contractor on the project.  See id.  Defendant Client Network Services, Inc. ("CNSI") is the prime contractor on the contract.  See id.

None of the members of NCI's Board of Directors hold comparable positions with CNSI. See id. ¶ 8, at 2-3.  NCI is not affiliated with CNSI.  See id. ¶ 10, at 3.  CNSI has no authority or power to take any action that would legally bind NCI. See id. ¶ 10, at 3.

Fowler's federal action is based on his employment in New Mexico as Network Engineer and his subsequent separation.  Fowler, a CNSI employee, worked on the contract with NCI employees.  See id. ¶ 6, at 2.  CNSI allegedly terminated Fowler because of the harassing and inappropriate conduct in which he engaged toward a NCI employee.  See id.

The undisputed facts show that, at the time that Fowler filed his EEOC administrative charges, he was aware of NCI's existence.  Fowler filed two charges of discrimination with the EEOC on or about December 16, 2006; charge #543-2007-00250 CNSI and #543-2007-0355 NCI.

See Affidavit of John Fowler ¶ 6, at 2; Memo., Exhibit A, Charge of Discrimination, Charge No. 543-2007-00250 against CNSI ("CNSI charge"); Plaintiff's Response in Opposition to Defendant NCI's Motion to Dismiss, filed October 22, 2007 (Doc. 9)("Response"), Exhibit 2, Charge of Discrimination, Charge No. 543-2007-00355 against NCI ("NCI charge").

When Fowler filed his administrative charge against CNSI alleging employment discrimination, he named or identified, in the charge that he filed, only one respondent. See CNSI Charge. NCI was not named or identified in the administrative charge against CNSI. See id.; Trammelle Aff. ¶ 9, at 3. In the body of the discrimination charge, Fowler alleged only that he worked for the CNSI from March 6, 2005 to October 26, 2006, that he complained to management about the alleged harassment, that he was then terminated on October 26, 2006, and that he believed he had been discriminated against on the basis of sex and retaliated against in violation of Title VII of the Civil Rights Act of 1964. See CNSI Charge.

There is no reference in that discrimination charge that Fowler's allegations of discrimination apply to any entity other than CNSI, which is named as the respondent. See id. In the CNSI charge, Fowler made no assertion of joint-employer responsibility, or liability between CNSI and NCI. See id. It is undisputed that no NCI agent or employee made a statement or representation to Fowler that CNSI represented NCI's interests. See Trammelle Aff. ¶ 12, at 4.

Fowler received his right to sue from the EEOC for CNSI in late April of 2007, but did not receive a right to sue from the EEOC for NCI. See Response, Exhibit 1, Affidavit of John Fowler ¶ 6, at 1 (executed October 19, 2007)("Fowler Aff."). In May of 2007, Fowler contacted the EEOC to inquire about the status of his EEOC charge against NCI #543-2007-00355. See id. ¶ 7, at 1. Fowler was told that the EEOC had misplaced his charge against NCI, and he needed to come in and

sign a new charge.  See id. ¶¶ 7, 8, at  1-2.

Fowler then signed another charge against NCI with the same case number that had been assigned in December of 2006.  See id. ¶ 8, at 1-2; Response, Exhibit 3, Charge of Discrimination, Charge No. 543-2007-00355 (dated June 1, 2007)("June 1, 2007 Charge").

When Fowler filed the discrimination charge against NCI in June of 2007, he provided "P.O. Box 5400, Albuquerque, New Mexico 87185" as the mailing address for NCI.  NCI Charge.  The EEOC file on the June 1, 2007 discrimination charge shows that the address that Fowler provided for NCI was not the correct address, because the mail that the EEOC sent to NCI at the address provided was returned to the EEOC.  See Defendant's Reply to Plaintiff's Opposition to its Motion to Dismiss or, in the Alternative, its Motion for Summary Judgment at 2, filed November 5, 2007 (Doc. 12)("Reply"), id., Exhibit 1.  Several documents in the file confirm the fact that the discrimination charge was returned to the EEOC.  See Reply at 2-3, id., Exhibits 2-4.

First, the EEOC file contains one note that is dated June 22, 2007 that reads: "Return to Sender.  There is no 'NCI' contractor at the NNSA [National Nuclear Security Administration' Service Center, Albuquerque."  Reply, Exhibit 1.  A woman named Maria Guerele signed the note, which contained a telephone number reference.  See Reply at 2.

Second, there is a notation in the file of a telephone conversation between an EEOC representative and Guerele on June 26, 2007.  See Reply at 2, id., Exhibit 2.  The notes from that conversation indicate that Guerele is not associated with either the respondent/NCI or the charging party.  See Reply at 2-3.

Fowler then requested a right to sue to pursue one lawsuit against both Defendants.  See Fowler Aff. ¶ 11, at 2.  Fowler received his right to sue from the EEOC.  See id. ¶¶ 11, 12, at 2;

Response, Exhibit 4, Notice of Right to Sue (Issued on Request)(dated June 12, 2007).  NCI never received either actual or constructive notice of Fowler's filing of an EEOC charge in which Fowler named NCI as the Respondent.  <u>See</u> Trammelle Aff. ¶ 9, at 3; Reply at 3.

## PROCEDURAL BACKGROUND

Fowler filed his action on July 12, 2007.  <u>See</u> Complaint for Employment Discrimination on the Basis of Sex, filed July 12, 2007 (Doc. 1)("Complaint").  In his Complaint, Fowler alleges claims under Title VII of the Civil Rights Act of 1964, as amended.  <u>See id.</u> ¶ 1, at 1; 42 U.S.C. §§ 2000e -2000e-17.

NCI's counsel contacted Fowler's counsel concerning its intent to file this motion to dismiss. Fowler opposes the motion.  <u>See</u> Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed September 20, 2007 (Doc. 7).  NCI moves the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claim against it or, in the alternative, for summary judgment pursuant to rule 56.  <u>See id.</u> at 1.  NCI contends that Fowler's claims against it must be dismissed, because it was never named or identified in the administrative charge.  <u>See</u> Memo. at 3.

NCI contends that, under the <u>Romero v. Union Pacific Railroad</u> standards, dismissal as a party to Fowler's lawsuit is appropriate.  <u>See</u> Memo. at 3-4 (citing <u>Romero v. Union Pac. R.R.</u>, 615 F.2d 1303, 1311-12 (10th Cir. 1980)).  NCI contends that the first prong of the <u>Romero v. Union Pacific Railroad</u> standard is met because "it is clear that [Fowler] knew of . . . NCI's role at the time that he filed the administrative charge with the EEOC . . . ."  Memo. at 4-5 (citing  <u>Buffington v. Phelps Dodge Corp.</u>, 800 F.Supp. 945, 947 (D.N.M. 1990)).  NCI argues that because any consent CNSI made to conciliation and compliance at the EEOC administrative level binds only CNSI, the

second Romero v. Union Pacific Railroad prong is met. See Memo. at 5. NCI asserts that, because it was absent from the EEOC proceeding, it has been subjected to prejudice resulting from its inability to participate in the EEOC's procedures, and thus that the third prong of the Romero v. Union Pacific Railroad test is met. See Memo. at 5-6. Lastly, NCI contends that, because it is undisputed that no agent or employee of NCI made any statement or representation to Fowler that CNSI represented the interests of NCI, it satisfies the final prong of the Romero v. Union Pacific Railroad test. See Memo. at 6. NCI contends that it never received actual notice of Fowler filing the EEOC charge against it. See Reply at 2-3. NCI also argues that it did not have constructive knowledge of Fowler's Charge of Discrimination against it. See id. at 3. NCI asserts that Fowler provided the EEOC with the wrong mailing address for NCI. See id. at 4. NCI contends that, as a result, it was deprived of all opportunity to participate in the EEOC proceedings. See id. It argues that, because it was "severely prejudiced" by the lack of notice, it should be dismissed from Fowler's complaint. Id.

Fowler responded on October 22, 2007. See Response at 1. Fowler contends that he filed charges of discrimination against both CNSI and NCI in December of 2006. See id. at 2. Fowler represents that, while he received the right to sue CNSI, he did not receive a right to sue for NCI. See id. at 2-3. Fowler represents that he contacted the EEOC about the status of his charge against NCI. See id. at 3. Fowler states that the EEOC told him that the charge against NCI had been misplaced, and requested that he come in and sign a new charge of discrimination. See id. Fowler notes that the new charge against NCI had the same number as the charge against NCI that he signed in December of 2006. See June 1, 2007 Charge of Discrimination. Fowler argues that, even if the Court finds that he is responsible for the misplacement of his EEOC charge against NCI, he signed

the second Charge of Discrimination within the 300-day time limit authorized by law.  See Response at 3.  Fowler concludes that, "even if the Court deems [that he] is responsible for the mistake of the EEOC misplacement of his December 16, 2006 signed charge, [he] certainly corrected the mistake by filing a second timely charge against NCI on June 1, 2007."  Id. at 4.

On December 3, 2007, NCI filed, pursuant to D.N.M.LR-Civ. 7.3, a Notice of Completion, notifying the Court that briefing is complete on its motion to dismiss.  See Doc. 15.

The Court held a hearing on January 17, 2008.  NCI argued that Fowler was reckless in providing the wrong address for NCI in his charge of discrimination.  See Transcript of Hearing at 8:18-20 (taken January 17, 2008)("Tr.")(Stahl).[1]  NCI noted that Fowler provided the same address for NCI as he did for CNSI.  See id. at 8:13-17 (Stahl & Court).  NCI conceded that Fowler would have been better off not providing any address than providing a wrong address, because then the EEOC would have "endeavor[ed] to find that address and use its investigatory arm to do so."  Id. at 8:21-9:3 (Court & Stahl).  NCI conceded that the only prejudice to it was its inability to participate in the conciliation process and, because of the amount of time that has passed, witnesses had moved on, because NCI was not aware of the claim immediately, it was unable to obtain statements.  See id. at 25:10-24 (Court & Stahl).

Fowler argued that Richardson v. Valley Asphalt, Inc., 109 F.Supp.2d 1332 (D.Utah 2000), governs his case.  See Tr. at 12:23-13:2 (Gilpin).  Fowler conceded, however, that he could not find any cases with the same fact pattern as his case.  See id. at 12:24-25 (Fowler).  Fowler's counsel also represented that very few EEOC cases are mediated.  See id. at 18:18-19 (Gilpin).  Fowler argued

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that he would be prejudiced if the Court were to dismiss his case because he would incur additional attorney's fees.  See id. at 20:19-21:3 (Court & Gilpin).  Fowler contended that he would have to prosecute two lawsuits with almost the same fact pattern, and he was unsure if the EEOC would allow him to sue NCI again.  See id. at 22:2-11 (Gilpin).

## LAW REGARDING MOTIONS TO DISMISS AND CONVERSION TO MOTIONS FOR SUMMARY JUDGMENT

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v.

-8-

Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted)).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

On a jurisdictional motion, the court can look at documents and evidence not contained in the pleadings. The court may consider evidence outside of the pleadings to determine whether subject matter jurisdiction exists: "Rule 12(b)(1) motions generally take one of two forms. The moving party may [i] facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or [ii] go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004)(quoting Maestas v. Lujan, 351 F.3d 1001, 1013 (10th Cir. 2003)).

"When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" Davis ex rel. Davis v. United States 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)). "'In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].'" Davis ex rel. Davis v. United States, 343 F.3d at 1296

(quoting Holt v. United States, 46 F.3d at 1003). When, however, "'resolution of the jurisdictional question is intertwined with the merits of the case,' it is necessary to 'convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule 56.'" Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Holt v. United States, 46 F.3d at 1003).

"When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)). "Exhaustion of administrative remedies is 'simply not an aspect of [a] substantive claim of discrimination.' The substantive issue in Plaintiffs' case is whether Plaintiffs were improperly denied CDIB cards, not whether a particular plaintiff has exhausted administrative remedies." Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1325). In the United States Court of Appeals for the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action for employment discrimination under Title VII, "not merely a condition precedent to suit." Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).

A court considers only the pleadings when deciding a rule 12(b)(6) motion. See County of Santa Fe v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1035 (10th Cir. 2002). "[A] district court may review mere argument contained in a memorandum in opposition to dismiss without converting the Rule 12(b)(6) motion into a motion for summary judgment." Id. (internal quotations omitted). If, however, matters outside the pleadings are presented, the motion must be considered a rule 56 motion for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or

12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  A court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue as to a material fact exists if the evidence that the parties present to the court is insufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 -249.  "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant."  Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995).  It is the non-moving party's burden to establish the  existence of a genuine issue of material fact.  See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

"Equitable tolling or estoppel simply is not available when there are jurisdictional limitations." Shendock v. Director, Office of Workers' Comp. Programs, 893 F.2d 1458, 1466 (3d Cir. 1990). "Jurisdictional limitations and the policies which they embody must be honored even in the face of apparent injustice or an administrative agency's obvious misapplication or violation of substantive law." Brown v.  Director, OWCP, 864 F.2d 120, 124 (11th Cir. 1989).  A lack of appellate jurisdiction mandates "an inability to act, not merely in unappealing cases, but in compelling cases as well." National Black Media Coalition v. FCC, 760 F.2d 1297, 1300 (D.C.Cir. 1985).  Jurisdictional legislation must be observed even though "a harsh result" may be obtained. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 318 (1988); Hallstrom v. Tillamook County,

493 U.S. 20, 31 (1989) ("As a general rule, if an action is barred by the terms of a statute, it must

be dismissed."); Hart v. J.T. Baker Chem. Co., 598 F.2d 829, 832 (3d Cir. 1979) ("Where the filing

requirements are considered 'jurisdictional,' non-compliance bars an action regardless of the equities

in a given case.").

## LAW REGARDING EXHAUSTION OF
## REMEDIES FOR A TITLE VII SUIT

"To exhaust administrative remedies, a plaintiff generally must present her claims to the

EEOC or authorized state agency . . . as part of her timely filed administrative EEOC charge and

receive a right-to-sue letter based on that charge."  Zhu v. Federal Housing Finance Bd., 389

F.Supp.2d 1253, 1276 (D. Kan. 2005).  "'Exhaustion of administrative remedies is a jurisdictional

prerequisite to suit under Title VII.'"  Kane v. Christian Bros. of Coll. of Santa Fe Cmty.,  No. CIV

06-682 JB/WDS, 2006 WL 4079684 at *7 (D.N.M. December 20, 2006)(Browning, J.)(quoting

Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir.1996)).  "Exhaustion of administrative remedies is

central to Title VII's statutory scheme, because it provides the EEOC and state deferral agencies with

the first opportunity to investigate discriminatory practices and enables them to perform their roles

of obtaining voluntary compliance and of promoting conciliatory efforts."  Kane v. Christian Bros.

of Coll. of Santa Fe Cmty., 2006 WL 4079684 at *7.

1.      **General Requirements for Exhaustion.**

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title

VII claim in federal court. See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of

administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC

with the first opportunity to investigate discriminatory practices and enables it to perform its roles

of obtaining voluntary compliance and of promoting conciliatory efforts. See Patterson v. McLean

-12-

Credit Union, 491 U.S. 164, 180-81 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Welsh v. City of Shawnee, 182 F.3d 934 (Table), No. 98-6243, 1999 WL 345597 at *2 (10th Cir. June 1, 1999)(quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

To exhaust administrative remedies, an individual claimant must: (i) first and timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321. Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1).  "[A]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." Welsh v. City of Shawnee, 1999 WL 345597 at *5. See Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir. 1992)(noting the plaintiff's EEOC affidavit contained "explicit reference" to types of discrimination alleged in the complaint); Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir.1985)(noting that handwritten addendum to typed charge of race discrimination, also suggesting sex discrimination, was sufficient to permit a judicial claim).

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(quotation omitted). The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII. See Keller v. Prince George's County, 827 F.2d 952, 956 (4th Cir. 1987); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980)(quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). Without such a filing, federal courts lack subject-matter jurisdiction to entertain Title VII claims, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-1104 (D. Colo.1999).

### 2.   42 U.S.C. §2000e-5

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission . . . the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof.

42 U.S.C. §2000e-5(b)(emphasis added).

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within

ten days thereafter . . . .

42 U.S.C. §2000e-5(e)(1)(emphasis added).

### 3.   29 C.F.R. § 1601.12.

42 U.S.C. § 2000e-5 constitutes Title VII's enforcement provision.  Section 2000e-5(b)

addresses, among other things, "[c]harges by persons aggrieved . . . ; notice to respondent; contents

of notice . . . ."  Section 2000e-5(b) states, in relevant part:

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved . .
> . , the Commission <u>shall serve a notice of the charge</u> . . . on such employer . . .
> (hereinafter referred to as the "respondent") within ten days, and shall make an
> investigation thereof.  <u>Charges</u> shall be in writing under oath or affirmation and <u>shall</u>
> <u>contain such information and be in such form as the Commission requires</u>.

42 U.S.C. § 2000e-5(b)(emphasis added).  Section 2000e-5(e)(1) provides:

> A charge under this section shall be filed within one hundred and eighty days after
> the alleged unlawful employment practice occurred and <u>notice of the charge</u> . . . <u>shall</u>
> <u>be served upon the person against whom such charge is made within ten days</u>
> <u>thereafter</u> . . . .

42 U.S.C. § 2000e-5(e)(1)(emphasis added).  Subsection 2000e-5(b)(1) states:

> If a charge filed with the Commission pursuant to subsection (b) of this section is
> dismissed by the Commission, of if within one hundred and eighty days from the
> filing of such charge  . . . , the Commission has not filed a civil action under this
> section  . . . , or the Commission has not entered into a conciliation agreement to
> which the person aggrieved is a party, the Commission . . .  shall notify the person
> aggrieved and within ninety days after the giving of such notice a civil action may
> be brought against the respondent named in the charge (A) by the person claiming
> to be aggrieved or (B) if such charge was filed by a member of the Commission  . .
> . .

42 U.S.C. § 2000e-5(f)(1).

29 C.F.R. § 1601.12 lists the information that a charge of discrimination must contain.  It

provides that each charge must contain:

> (a) Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12. In particular, 29 C.F.R. § 1601.12 requires that the complainant provide "[t]he full name and address of the person against whom the charge is made, if known . . . ." 29 C.F.R. § 1601.12(a)(2). See Jones v. U.P.S., Inc., 502 F.3d 1176, 1184 (10th Cir. 2007)(finding that an employee's charge of discrimination satisfied the EEOC's minimum requirements for a charge by providing a "written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of" under C.F.R. § 1601.12(b)); Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1166 (10th Cir. 2007)(stating that a "plaintiff's . . . filing must satisfy the charge 'content' regulations promulgated by the EEOC")(citing 29 C.F.R. § 1601.12(b)).

4.    **Exception to Exhaustion Requirement That Respondent Be Named in a Title VII Administrative Charge of Discrimination.**

Under Title VII of the Civil Rights Act, as amended, a civil action may be brought only "against the respondent named in the [administrative] charge."  42 U.S.C. §2000 e-5(f)(1).  The United States Court of Appeals for the Tenth Circuit has held that the omission of a named party from the EEOC administrative charge will not result in the automatic dismissal of the defendant. See Romero v. Union Pac. R.R., 615 F.2d 1303, 1311-12 (10th Cir. 1980).  Rather, the court will look to four factors to determine whether dismissal is warranted.  See id.  These factors are:

> [i] whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; [ii] whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; [iii] whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [iv] whether the unnamed party has in some way represented to the complainant that its relationship with the complainant to be through the named party.

Id. at 1312 (citations omitted).  The Tenth Circuit noted that the United States Court of Appeals for the Third Circuit had held that "where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have [sic] notice of the charge and the EEOC have had an opportunity to attempt conciliation."  Id. at 1311 (citing Glus v. G.C. Murphy Co., 562 F.2d 880 (3d Cir. 1977)).  "This identity-of-interest exception satisfies a Title VII purpose that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation."  Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1185 (10th Cir. 1999).  See Kane v. Christian Bros. of Coll. of Santa Fe Cmty., 2006 WL 4079684 at *7 (noting that "exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC and state deferral agencies with the first opportunity to investigate discriminatory practices and

enables them to perform their roles of obtaining voluntary compliance and of promoting conciliatory efforts."); Vital v. Interfaith Medical Ctr., 168 F.3d 615, 619 (2d Cir. 1999)(noting that the purpose of the charge of discrimination is "to notify the charged party of the alleged violation and also bring[] the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates.").

Notice of the employment discrimination charge is fundamental to ensure that the respondent is appraised of the allegations that are asserted against it. Title VII requires that the respondent receive notice of the employment discrimination charge within ten days of the filing of the charge with the agency. See 42 U.S.C. § 2000e-5(b) & (c). In Martin v. Purolator Courier, No. 94 CV 1004 (FB), 1996 WL 429016 (E.D.N.Y. July 25, 1996), the court explained that "the purpose of th[e] notice provision [, 42 U.S.C. § 2000e-5(e)] is to encourage settlement of discrimination disputes through conciliation and voluntary compliance." 1996 WL 429016 at *5 (internal quotations omitted). The court noted, however, that a Title VII action may proceed without frustrating Title VII's remedial goals "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." Id. (internal quotations omitted). The court considered "[t]he underlying issue of notice [a]s essentially subsumed under the third factor [of Romero v. Union Pacific Railroad]." Id. at *6. The court explained that "[c]ourts have consistently held that an unnamed party was not prejudiced by not being named or included in the agency complaint where it had notice of the proceeding and an opportunity to intervene." Id.

The Tenth Circuit determined that the Romero v. Union Pacific Railroad analysis is unnecessary where the jury has found that the named and unnamed parties constitute a single employer. See Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185 (noting that the Romero v. Union

Pac. R.R. analysis contemplates that additional factors may be relevant).   "We cannot believe Congress intended that a person filing charges should accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity which in some way may have violated Title VII."  Glus v. G.C. Murphy Co., 562 F.2d at 888.  In Glus v. G.C. Murphy Co., the plaintiff filed charges of discrimination against her employer and her local union, but not the AFL-CIO, with the EEOC.  See id. at 882, 888.  The Third Circuit noted that "[i]t would seem reasonable from the standpoint of the complainant that if voluntary compliance could not be obtained through the EOC from her employer or her local union[,] the addition of the International [AFL-CIO] would make little, if any, difference."  Id. at 888.  Nevertheless, the Third Circuit remanded the case to the district court for reconsideration in light of the factors recognized by the Tenth Circuit in Romero v. Union Pacific Railroad.  See Glus v. G.C. Murphy Co., 562 F.2d at 888-89. See Persik v. Colorado State University, 60 Fed.Appx. 209, 210-11 (10th Cir. 2003)(finding that there was no identity of interest between Colorado State University and a temporary employment agency, Adecco, where the plaintiff filed with the EEOC a charge only against the University and later filed suit against both the University and Adecco).

### 5.     Richardson v. Valley Asphalt, Inc.

In Richardson v. Valley Asphalt, Inc., 109 F.Supp.2d 1332 (D.Utah 2000), the district court denied the defendants' motion to dismiss for lack of jurisdiction.  See id. at 1338.  On or about September 16, 1999, the plaintiff, Richardson, filed a charge of discrimination with the Utah Anti-Discrimination and Labor Division and the EEOC, alleging that he had been discriminated against in violation of the Americans with Disabilities Act.  See id. at 1334.  On or about February 24, 2000, the EEOC issued a Notice of Right to Sue, or the Right-to-Sue Notice, to Richardson.  See id. He

received the Notice on or about March 6, 2000.  See id. Thus, the EEOC issued the Right-to-Sue Notice approximately 161 days after the charge was filed.  See id. Richardson filed suit more than 232 days after the initial charge was made.  See id.

The defendants claimed that the EEOC's failure to wait the 180 days specified in Title VII before issuing the Right-to-Sue Notice deprived the court of jurisdiction, and required dismissal and remand to the EEOC for the EEOC to "complete its statutory obligations." Id. at 1334.  The EEOC issued the plaintiffs a right to sue letter approximately 161 days after the charge was filed.  See id. One of the plaintiffs filed suit more than 232 days after the initial charge was made.  See id.

The plaintiffs contended that the premature issuance of the Notice did not preclude them from filing a federal lawsuit.  See id. at 1334-35.  The plaintiffs accused the defendants of intentionally delaying the case so that Richardson would die before the case could go to trial.  See id. at 1335.  The Honorable Dale A. Kimball, United States District Judge, held that the EEOC's issuance of the right-to-sue notice before the expiration of the 180-day period after the charge was filed did not bar the Title VII action.  See id. at 1338.

The court noted that the statutory language of 42 U.S.C. § 2000e-5(f)(1) obligates the EEOC to issue a right-to-sue notice in two instances: "[i] after 180 days have passed without conciliation or filing suit, or [ii] upon dismissal of the charge." Id. at 1337.  The court interpreted this language as "impos[ing] a maximum amount of time for the EEOC to investigate and resolve a charge before an individual may file a private suit." Id.  The court concluded that Title VII is "ambiguous in both its language and legislative history," and determined that, under the Chevron doctrine, "the EEOC's interpretation of Title VII is a permissible construction of the statute, read in light of both the language and legislative history." Id. at 1338.  The court concluded that

equitable considerations undoubtedly militate in favor of allowing [the] Plaintiffs in this case to proceed in federal court.  The EEOC has already determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days of the filing of the charge.  [The] Plaintiffs should not be penalized for the EEOC's failure to wait 180 days before issuing the Right-to-Sue Notice.

Id.  The court determined that remanding the case to the EEOC "would serve no purpose" because "[t]he EEOC would be unlikely to act on the charge, and remand would serve only to delay the ultimate resolution of the case."  Id.  The court noted that, "[w]ith his diagnosis of AIDS, [one of the plaintiffs] might not have that time to waste."  Id.

## ANALYSIS

The Court will dismiss NCI because the burden of Fowler's mistake must fall on some party.  While NCI was named in the Title VII administrative charge, NCI never received notice, and the facts show that NCI meets the Romero v. Union Pacific Railroad requirements.  Thus, the dismissal of NCI as a party to the lawsuit is appropriate.  The Court will grant the motion to dismiss.

## I.     THE ROMERO V. UNION PACIFIC RAILROAD FACTORS ARE APPROPRIATE CONSIDERATIONS IN THIS CASE.

Under 29 C.F.R. § 1601.12, each charge must contain the "full name . . .  of the person against whom the charge is made, if known . . . "  29 C.F.R. § 1601.12(a)(2).  If the charge does not include the name of the respondent, and the claimant later sues the respondent, the claimant arguably has not exhausted his or her administrative remedies.  To avoid the harsh results that failure to name the correct respondent may cause, the Tenth Circuit developed the factors in Romero v. Union Pacific Railroad to mitigate the harshness of dismissal in certain cases.

While the Tenth Circuit has not expressly or otherwise extended its test in Romero v. Union Pacific Railroad to the situation where the petitioner provides an incorrect address, the wrong-

address situation appears to be similar to the situation where the petitioner fails to name the respondent. The plain language of 29 C.F.R. § 1601.12(a)(2) states that each charge shall contain "[t]he full . . . address of the person against whom the charge is made, if known . . . ." Here, by giving an incorrect address, Fowler did not give "[t]he . . . address" of NCI. 29 C.F.R. § 1601.12(a)(2). The situation is not unlike the situation where the charge does not give "[t]he . . . name" of the respondent. 29 C.F.R. § 1601.12(a)(2). If the Romero v. Union Pacific Railroad factors are helpful when the claimant does not put in the respondent's name, they may be helpful when the complainant does not put in the respondent's address.

The policy for which the factors in Romero v. Union Pacific are developed also seem applicable here, because the two situations appear to be the same. The purpose of the exhaustion requirement is to allow the EEOC to fulfill its role of obtaining voluntary compliance and of promoting conciliatory efforts. See Kane v. Christian Bros. of Coll. of Santa Fe Cmty., 2006 WL 4079684 at *7. The burden of the error must fall on some party, and, given Congress' expressed desire for conciliation before the petitioner invokes the federal court's jurisdiction, there is no reason to automatically make the respondent, who is innocent of the petitioner's mistake, bear the burden. Cf. Higgs v. Street Serv. Ctr., 982 F.2d 528 (Table), No. 92-6260, 1992 WL 367983 at ** 1, 4 (10th Cir. December 9, 1992)(affirming the district court's finding that the plaintiff "was partly at fault for the address errors because he apparently at no time completed a change of address card with the postal department" where the EEOC letters concerning his charge were sent to the wrong address); Banks v. Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 327 (6th Cir. 1988)(holding that the complainant has an affirmative duty to notify the EEOC of any change in mailing address).

Thus, the Romero v. Union Pacific Railroad factors appear to be helpful in determining what

-22-

the Court should do in this situation.  See Knowlton v. Teltrust Phones, Inc., 189 F.3d at 1185

(noting that the Romero v. Union Pac. R.R. factors "satisf[y] a Title VII purpose that the defendant

have notice of the charge and the EEOC have an opportunity to attempt conciliation"). The Tenth

Circuit explained in Romero v. Union Pacific Railroad that its factors are a "narrow exception[ ] to

the strict requirement that each defendant must have been specifically named in the EEOC charge

where the defendant was informally referred to in the body of the charge." 615 F.2d at 1311.  That

is, although "[t]he filing of a timely charge of discrimination with the EEOC is a jurisdictional

prerequisite to the institution of a lawsuit," the Romero v. Union Pacific Railroad factors are a

narrow exception that may allow the district court to determine "subject matter exists under Title

VII over the individual defendants." Id. at 1311-12.  The Romero v. Union Pacific Railroad factors

determine whether there is sufficient identity of interest between the respondent and the defendant

to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have

had an opportunity to attempt conciliation.  See Romero v. Union Pac. R.R.,615 F.2d at 1311.  The

Tenth Circuit discussed an analogous problem in Archuleta v. Duffy's Inc., 471 F.2d 33 (10th Cir.

1973).  It stated:

> Nor can we agree that the naming of the defendant . . . constituted a simple
> misnomer. . . . An entity different from the one named and appearing during the
> administrative process was made a party. Although this court is committed to the
> general proposition that it will not allow technicalities to defeat the proper
> administration of justice, and will allow misnomers to be amended and relate back
> as a matter of course, the court is equally committed to the necessity of
> distinguishing between misnomers and substitution of parties.

Id. at 35 (internal citations omitted).

> Corrections of misnomers are permitted under Rule 15(c).  Generally . . . the plaintiff
> actually sued and served the correct party, the party he intended to sue, but
> mistakenly used the wrong name of defendant. The defendant, in these cases, of
> course, had notice of the suit within the statutory period and was not prejudiced by

a technical change in the style of the action. The addition or substitution of parties
who had no notice of the original action is not allowed.

Graves v. General Ins. Corp., 412 F.2d 583, 584-85 (10th Cir. 1969)(internal quotations

omitted)(emphasis added).

The Court is cognizant that the Commission -- not the complainant -- sends out the charge

to the respondent.  It could be argued, with force, that the Commission, rather than Fowler, is to

blame for sending the charge to the wrong address.  But the Tenth Circuit in Romero v. Union

Pacific Railroad did not consider who actually mailed the charge to be the determinative factor;

rather, the Court focused on the contents of the charge.  The Court believes that it too should focus

on the contents of the charge rather than on the mechanics of who mails the charge.  The EEOC has

limited resources, and it must rely -- to some degree -- on the claimant to provide the correct name

and address for the respondent.

## II.     THE ROMERO V. UNION PACIFIC RAILROAD FACTORS COUNSEL THAT THE COURT FIND THAT FOWLER DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES.

Even if the Court is correct that the factors in Romero v. Union Pacific Railroad are useful

in determining whether it is proper to conclude that Fowler exhausted his administrative remedies,

the factors cannot be applied in the same manner that they would be applied in a wrong-name case.

Indeed, some of the factors need to be reworded to be useful.  In any case, the factors in Romero v.

Union Pacific Railroad suggest that the Court should dismiss Fowler's claims against NCI for lack

of exhaustion.

### A.     NCI HAD NEITHER ACTUAL NOR CONSTRUCTIVE NOTICE OF THE EEOC ADMINISTRATIVE CHARGE AGAINST IT OR CNSI.

Title VII requires that the Respondent receive notice of the employment discrimination

-24-

charge within ten days of the filing of the charge with the agency.  See 42 U.S.C. § 2000e-5(b) &
(c).  There does not appear to be any dispute that NCI never received actual notice of Fowler's filing
of the EEOC Charge.  See Trammelle Aff. ¶ 9, at 3; Reply at 3.  NCI never received notice of the
employment discrimination charge that Fowler filed and in which he named NCI as the respondent.
See id.  Moreover, NCI did not have any constructive knowledge that Fowler's allegations of
employment discrimination, arising out of his employment with and termination by CNSI,
implicated or involved, in any way, NCI.  Fowler did not indicate in his Charge of Discrimination
against CNSI that his allegations of discrimination applied to any entity other than CNSI.  See CNSI
charge.

NCI's lack of notice of its alleged involvement in Fowler's employment discrimination
charge is because Fowler provided the EEOC with the wrong mailing address for NCI.  See NCI
Charge (listing NCI's mailing address as "P.O. Box 5400, Albuquerque, New Mexico 87185" ).
Because of the erroneous information that Fowler provided to the EEOC, NCI was deprived of all
opportunity to attempt to participate in the EEOC conciliation process and attempt to resolve the
charge at the administrative level.  NCI argues that it has been severely prejudiced by the lack of
notice and that, therefore, the Court should dismiss the Complaint against it.  See Romero v. Union
Pac. R.R., 615 F.2d  at 1311-12.

Fowler contends in his Opposition to Defendant's Motion to Dismiss that, because he filed
an administrative charge with the EEOC, which identified NCI as the Respondent, and because he
received the Notice of Right to Sue, he has satisfied all the prerequisites to bringing this action and
naming NCI as a Defendant.  Fowler ignores, however, that NCI did not have notice of his charge
in which he named NCI as the Respondent.  His situation is similar to the situation where the

respondent is not named at all, and thus the <u>Romero v. Union Pacific Railroad</u> standards are useful here.  <u>See</u> <u>Knowlton v. Teltrust Phones, Inc.</u>, 189 F.3d at 1185 (noting that the <u>Romero v. Union Pac. R.R.</u> factors "satisf[y] a Title VII purpose that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation).

### B. THE FIRST FACTOR OF THE <u>ROMERO V. UNION PACIFIC RAILROAD</u> STANDARD COUNSELS AGAINST A FINDING OF EXHAUSTION.

The first <u>Romero v. Union Pacific Railroad</u> factor is "whether the role of the unnamed party could through reasonable effort by the complaint be ascertained at the time of the filing of the EEOC complaint."  615 F.2d at 1312.  The first factor in a wrong address case might be recast as whether the correct address of the named party could through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC charge.  At the hearing, no one pointed out any problem in obtaining the correct address.  During the hearing, Fowler represented that he put the address of the location where he worked, and where both CNSI and NCI were located, <u>see</u> Tr. at 15:5-7 (Gilpin), however, Fowler conceded that he put the wrong address for NCI.  <u>See</u> <u>id.</u> at 15:10-12 (Court & Gilpin).

Fowler knew NCI's role at the time he filed his administrative charge with the EEOC.  Fowler indicates in his affidavit that he filed an EEOC charge against NCI.  <u>See</u> Fowler Aff. ¶ 4, at 1.  NCI never participated in any conciliation proceedings with the EEOC.  <u>See</u> Trammelle Aff. ¶ 9, at 3.  <u>See</u> <u>Buffington v. Phelps Dodge Corp.</u>, 800 F. Supp. 845, 947 (D.N.M. 1990)(holding that it was clear from the affidavit submitted by the plaintiff that he knew the defendants' roles and that the defendants indicated in their affidavits that they did not participate in conciliation proceedings).  Fowler should have made certain that he provided the right address for NCI.  At the hearing on this motion, the Court inquired whether Fowler should have been suspicious about the fact that NCI was

not participating in the EEOC conciliation process and whether he should have inquired of the EEOC why NCI was not participating in the administrative process.  Fowler informed the Court, however, that it was not at all unusual a plaintiff/claimant not to hear from the EEOC after he or she files a charge and before he or sue receives a right to sue letter.  Thus, there does not appear to be any reason to impose on Fowler any burden of questioning the EEOC about where NCI was in the process or penalizing him for not contacting the EEOC after he filed his charge.

There is no dispute that NCI needed to be part of the EEOC process.  The statute placed on Fowler the burden of completing the form that the Commission proscribed.  The Commission's regulations placed on Fowler the burden of providing it with "[t]he . . . address" of NCI.  There is nothing in the record that suggests that NCI's correct address could not have, through reasonable effort by Fowler, been ascertained at the time of the filing of the EEOC charge.  Thus, this factor counsels against finding that Fowler has exhausted his administrative remedies.

### C.   THE SECOND FACTOR OF THE ROMERO V. UNION PACIFIC RAILROAD TEST DOES NOT SUPPORT A FINDING OF EXHAUSTION.

The second factor in Romero v. Union Pacific Railroad is "whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings."  615 F.2d at 312.  The factor can be recharacterized as whether, under the circumstances, the interests of the properly notified party are so similar to those of the party not notified because of the wrong address that, for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include the non-notified party in the EEOC proceeding.  Under the circumstances of this case, NCI and CNSI are not fungible, and the factor counsels against finding that Fowler exhausted his administrative remedies.

NCI and CNSI's interests are not so similar that, for the purposes of obtaining voluntary conciliation and compliance, it would be unnecessary to include NCI in the EEOC proceedings. See Romero v. Union Pac. R.R., 615 F.2d at 1312. Thus, any agreement to which CNSI might have consented or proposed during efforts at conciliation and compliance at the EEOC administrative level would have been binding only on CNSI. See Trammelle Aff. ¶ 10, at 3. See Ortiz v. Wingard, 173 F.Supp. 2d 1155, 1161 (D.N.M. 2001)(noting that "the interests of the Housing Authority of Las Cruces are not so similar as the City's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the City in the EEOC proceedings."). NCI needed to part of the EEOC pre-trial conciliatory process. Accordingly, this factor counsels against finding that Fowler exhausted his administrative remedies.

### D.   THE THIRD FACTOR OF THE ROMERO V. UNION PACIFIC RAILROAD TEST COUNSELS AGAINST EXHAUSTION.

The third Romero v. Union Pacific Railroad factor is "whether [the unnamed party's] absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party." 615 F.2d at 1312. NCI's absence from the EEOC proceeding resulted in prejudice to it. Because Fowler did not properly list NCI's mailing address in the EEOC charge, NCI was deprived of the opportunity to establish that it was not a proper party to Fowler's claim of discrimination before the EEOC. NCI now must incur the expenditure of greater resources and legal fees to defend itself in this federal lawsuit to prove that it is not a proper party to this federal lawsuit. See Trammelle Aff. ¶ 11, at 3-4. Further, Fowler's failure to name NCI in the EEOC charge deprived NCI of the opportunity to participate in the EEOC's voluntary conciliation and compliance. See id. ¶ 9, at 3. See Buffington v. Phelps Dodge Corp., 800 F.Supp. at 947 (holding that unnamed parties' inability to participate in the conciliation meant that those parties were prejudiced "because [the defendants]

-28-

were not named in the EEOC complaint and were not given an opportunity to conciliate . . . ha[d] no[ ] . . . opportunity to settle . . . or otherwise protect their rights.").

Notice of the employment discrimination charge is fundamental to ensure that the respondent is appraised of the allegations that are asserted against it.  NCI did not receive notice of Fowler's charge of discrimination against it and as such, was "prejudiced by not begin named or included in the agency complaint where it had notice of the proceeding and an opportunity to intervene." Martin v. Purolator Courier, 1996 WL 429016 at * 6.  NCI has demonstrated that under the third factor it was actually prejudiced because of its absence from the EEOC proceedings.

Fowler contends that even if the Court were to find that Fowler were responsible for the EEOC's misplacement of his first charge against NCI, that he signed the second charge for NCI within the 300-day time limit authorized by law and thus still complied with his administrative remedies of filing a timely charge of discrimination because he was issued a right to sue from the EEOC for NCI.  See Response at 4.  The Notice of Right to Sue that the EEOC issued to Fowler indicates that it was issued on request, that less than 180 days have passed since the filing of his charge of discrimination against NCI, and that "it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from filing of [the] charge."  Response, Exhibit 4, Notice of Right to Sue (Issued on Request).  The EEOC issued a right to sue letter to Fowler upon request.  See 9 C.F.R. § 1601.28 ("(a) Issuance of notice of right to sue upon request. (1) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties . . . .").  The Court does not believe that Fowler exhausted

his remedies when he requested the EEOC issue him a right to sue letter without the NCI's participation in the EEOC administrative process because one of the purposes behind requiring Fowler to exhaust his administrative remedies is to allow NCI to participate in the conciliation process.

In Richardson v. Valley Asphalt, Inc., the EEOC issued the right-to-sue letter after 161 days instead of waiting the 180 days specified in Title VII before failure to wait the 180 days specified in Title VII.  See 109 F.Supp.2d at 1334.  The court concluded that

> equitable considerations undoubtedly militate in favor of allowing [the] Plaintiffs in this case to proceed in federal court.  The EEOC has already determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days of the filing of the charge.  [The] Plaintiffs should not be penalized for the EEOC's failure to wait 180 days before issuing the Right-to-Sue Notice.

Id.  The court determined that remanding the case to the EEOC "would serve no purpose" because "[t]he EEOC would be unlikely to act on the charge, and remand would serve only to delay the ultimate resolution of the case."  Id.  The court noted that, "[w]ith his diagnosis of AIDS, [one of the plaintiffs] might not have that time to waste."  Id.

Because Richardson v. Valley Asphalt, Inc. involved a failure to follow the statutory mandates in Title VII by the EEOC, the Court does not believe it is applicable to this case where it is the plaintiff, Fowler, who did not follow the statutory requirements of Title VII and the EEOC. Additionally, Fowler has not suggested that he will suffer the extreme prejudice faced by the plaintiffs in Richardson v. Valley Asphalt, Inc.  At the hearing,  Fowler argued that he would be prejudiced if the Court were to dismiss the case because there would be additional attorney's fees. See id. at 20:19-21:3 (Court & Gilpin).  Fowler contended that he would have to prosecute two lawsuits with almost the same fact pattern and he was unsure if the EEOC would allow him to sue

NCI again.  See id. at 22:2-11 (Gilpin).

In Richardson v. Valley Asphalt, Inc., one of the plaintiffs faced the possibility of death without resolution of his case were the matter to be remanded to the EEOC.  See Richardson v. Valley Asphalt, Inc.,109 F.Supp.2d at 1338.  The district court in Richardson v. Valley Asphalt, Inc. found that "equitable considerations undoubtedly militate[d] in favor of allowing [the] Plaintiffs." It is not clear that equitable considerations "undoubtedly militate in favor of" Fowler here when he provided the wrong address to the EEOC. Cf. McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230, 238 (10th Cir. 1968)(noting that the doctrine of "unclean hands . . . is based upon conscience and good faith, and is confined to misconduct in relation to or in all events connected with the matter in litigation so that it in some manner affects the equitable relations of the parties to the suit."); Black's Law Dictionary  (8th ed. 2004)(defining the clean-hands doctrine as "[t]he principle that a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith . . . Such a party is described as having 'unclean hands.'").

Here, Fowler conceded at the hearing that he may be able to renew his EEOC proceedings. He may not be time barred because he timely filed his charges against NCI.  At this stage of the proceedings, Fowler has not shown any prejudice from the dismissal of his case against NCI.

While Fowler argues that Richardson v. Valley Asphalt, Inc. stands for the proposition that failure to give the employer the opportunity to mediate before litigation is not prejudice, that justifies dismissal, the Court does not read the district court's opinion that broadly.  The court in Richardson v. Valley Asphalt, Inc. was dealing with a circumstance that was entirely of the EEOC's making. Here the problem is either mostly or entirely the fault of Fowler's negligence.

**E.     FINAL FACTOR OF THE <u>ROMERO V. UNION PACIFIC RAILROAD</u> COUNSELS FOR A FINDING AGAINST EXHAUSTION.**

The final factor in <u>Romero v. Union Pacific Railroad</u> is "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant to be through the named party." 615 F.2d at 1312. This factor is not of much use in a wrong address case. In any case, it does not counsel for finding exhaustion.

As to the final <u>Romero v. Union Pacific Railroad</u> requirement, nothing in the charge against CNSI indicated that there was joint liability with NCI. <u>See</u> CNSI charge. <u>See</u> <u>Romero v. Union Pac. R.R.</u>, 615 F.2d at 312 (holding that the final factor is "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."). If NCI was to be sued, it needed to be named, and named and identified properly. NCI did not make any representations or statements to Fowler that CNSI represented its interests such that NCI did not need to be named or identified in the EEOC charge of discrimination. <u>See</u> Trammelle Aff. ¶12, at 4; <u>Buffington v. Phelps Dodge Corp.</u>, 800 F.Supp. at 947 (holding that the final factor balanced for the defendants, because the plaintiff did not demonstrate that "he was told he only needed to name Phelps Dodge or that Phelps Dodge somehow represented Strahan and Trujillo [,the defendants unnamed in the charge of discrimination]."). Fowler has not submitted any evidence that NCI told him that he only needed to name CNSI or that CNSI somehow represented NCI. None of the members of NCI's Board of Directors hold comparable positions with CNSI. <u>See</u> Trammelle Aff. ¶ 8, at 2-3. NCI is not affiliated with CNSI. <u>See</u> <u>id.</u> ¶ 10, at 3. CNSI has no authority or power to take any action that would bind legally NCI. <u>See</u> <u>id.</u> ¶ 10, at 3.

In conclusion, while the <u>Romero v. Pacific Union Railroad</u> factors do not fit this situation precisely, they provide some guidance in a situation where there is no rule. Application of these

factors does not, however, support a finding of exhaustion.  Moreover, because the burden of this

mistake must fall on one of the parties, it makes sense to make Fowler -- who made the mistake --

bear the burden of the mistake rather than the respondent, who was innocent of the mistake.

**IT IS ORDERED** that Defendant NCI's Motion to Dismiss is granted.  NCI is dismissed

as a named Defendant.  The Plaintiff's request for costs is denied.[2]


_____

UNITED STATES DISTRICT JUDGE


*Counsel:*

Donald G. Gilpin
Torri A. Jacobus
Gilpin & Keefe, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

John G. Kruchko
Kathleen A. Talty
Kruchko & Fries
McLean, Virginia

_____

 [2] Fowler is not the prevailing party.  Thus, he is not entitled to any costs.  See Mirzai v. State of New Mexico General Serv. Dept., 506 F.Supp.2d 767, 791 (D.N.M. 2007)(Browning, J.)("For actions proceeding under Title VII, however, the Court may, in its discretion,  'allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs.'")(quoting 42 U.S.C. § 2000e-5(k)). "In any action or proceeding  . . . the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ."  42 U.S.C. § 2000e-5(k).

-- and --

Thomas L. Stahl
Rodey, Dickason, Akin & Robb, P.A.
Albuquerque, New Mexico

>    *Attorneys for Defendant NCI*
>       *Information Systems, Inc.*

Ann M. Conway
Jennifer Davis Hall
Miller Stratvert P.A.
Albuquerque, New Mexico

>    *Attorneys for the Defendant CNSI*